(No. 40121.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* VERONICA CREWS, Appellant.

*Opinion filed November 30, 1967.*

RAYMOND J. COSTELLO, of Dundee, and GEORGE D. CARBARY, ROBERT A. CHAPSKI, and DONALD WEAVER, all of Elgin, for appellant.

WILLIAM R. KETCHAM, State's Attorney, of Elgin, (W. BEN MORGAN, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE WARD delivered the opinion of the court:

The defendant, Veronica Crews, jury having been waived, was convicted of murder in a bench trial in the circuit court of Kane County and sentenced to death. In this appeal the defendant complains: (1) that she was not proved guilty of murder beyond all reasonable doubt or, alternatively, that she was proved guilty only of voluntary manslaughter; (2) that the trial court erred in admitting certain evidence which was obtained by an unauthorized entry of her home; (3) that she was prejudiced by the trial court's reliance on certain hearsay evidence which was the product of a private investigation instituted by the court subsequent to conviction but prior to sentencing; and (4) that the sentence imposed was excessive.

On March 21, 1966, the victim, Lisa London, also known as Lisa Crews, a child of about 2 years of age,

had been residing in the defendant's home for approximately a year. The defendant and her husband were arranging to adopt the child, who was the daughter of a sister of the defendant. On that morning, her husband having gone to work, the defendant was home alone with her 4½-year-old adopted son and Lisa. The evidence showed that about noon of that day Lisa had died. The defendant concealed the fact of the child's death from her husband until the following afternoon, Tuesday, March 22. Later on Tuesday, the defendant and her husband notified the police, who came to the defendant's house and found the dead child in her crib.

The defendant's argument that the State failed to prove her guilty of murder beyond a reasonable doubt is unpersuasive.

Donna Flynn, the defendant's cellmate, testified that the defendant gave her an account of the events of March 21 and March 22 as they related to the defendant. The witness related that the defendant told her that on the morning of March 21 she had spanked Lisa with a belt, after the child had turned on the hot water tap while in the bathtub. The defendant told Flynn that blood then came from the child's mouth and that she quickly expired. The defendant also admitted to Mrs. Flynn that she then washed and dried the belt in an effort to remove the blood and hair from it. Evidence introduced corroborated this described treatment of the belt, which was received as an exhibit. Louis Vitullo, a microanalyst for the Chicago Police Department Crime Laboratory, testified that he had tested and compared a hair taken from the child with one which adhered to the belt, and it was his opinion that both hairs came from the same person. Dr. Carlos Romero, a pathologist, testified that an autopsy he performed disclosed hemorrhages in the victim's brain, lungs and spleen, caused by injuries or blows; bruises and wounds over 60 percent of the body; and a broken right shoulder bone. The doctor further testi-

fied that his opinion, upon autopsy, was that death resulted from shock, caused by multiple blows.

The defendant did not testify or present any other evidence at the trial. It appears from evidence introduced by the State that the defendant told the police that the infant had turned on the hot water in the bathtub and that she was killed by the defendant's accidentally striking the child's face against the faucet as the defendant attempted to pull her from the tub. However, it is evident that the testimony of the pathologist as to the extensive injuries sustained by the child and the photographs of her body which were received in evidence prohibited belief in the defendant's account of the tragedy.

A reviewing court will disturb a finding of guilty only where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. (*People* v. *Washington,* 27 Ill.2d 104; *People* v. *Sustak,* 15 Ill.2d 115.) The evidence here leaves no reasonable doubt of the defendant's guilt.

The defendant next asserts that on the evidence presented there should have been a finding that she was guilty of voluntary manslaughter, if of any crime, but not murder.

Section 9—2 of the Criminal Code of 1961 provides that: "(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by: (1) the individual killed * * * Serious provocation is conduct sufficient to excite an intense passion in a reasonable person." (Ill. Rev. Stat. 1965, chap. 38, par. 9—2.) The only categories of serious provocation which have been recognized are: "substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse; but not mere words or gestures or trespass to property." (S.H.A., chap. 38, par. 9—2, Committee Comments; see, *e.g., People* v. *Washington,* 27 Ill.2d 104; *People* v.

*Harris,* 8 Ill.2d 431; *People* v. *Sain,* 384 Ill. 394.) The doctrine of provocation is a compassionate one, based on a recognition of human frailty. It is ludicrous, however, to suggest that a "reasonable person" could have been provoked by the actions of a 2-year-old child. The contention has no merit.

The defendant now claims that evidence relating to spots of blood on the victim's crib and on the bedroom wall was obtained through an illegal search and should not have been admitted. The officers were present in the home because, as the chief of police testified, "We asked Mr. Crews if he would open the door when we arrived and he handed us the keys and stated that he didn't want to go in there." This testimony was not denied and there is no other suggestion in the record that the entry was without consent or that such consent was withdrawn.

The defendant argues that statements attributed to Jeffrey, the defendant's 4½-year-old adopted son obviously and improperly influenced the trial court in determining the punishment imposed.

Following the defendant's conviction on June 28, 1966, the trial court on June 30 commenced a hearing in aggravation and mitigation. The hearing was continued until July 8, 1966. At the conclusion of the hearing on July 8, and immediately before pronouncing sentence, the trial judge stated that he had searched the files of the Juvenile Division of the court and there had found what was apparently a caseworker's report. The report purported to relate what the woman, with whom Jeffrey had been temporarily placed, told the caseworker of Jeffrey's conduct in her home in a 3-day period subsequent to Lisa's murder. The case-worker concluded the statement, which the trial judge read into the record, by recommending that Jeffrey be made a ward of the court. The portion of the report which sets forth the foster mother's description of Jeffrey's conduct and conversations fills 5 legal sized pages of the transcript. The

statements of Jeffrey, if made and if true, portray horrifying mistreatment of Lisa on other occasions by the defendant. It is plain that the trial judge was influenced by the report. This misconduct was denied by the defendant.

In *People* v. *Mann,* 27 Ill.2d 135 at 139, we said that: "In determining the degree of punishment to be inflicted, the court is not bound by the usual rules of evidence found in criminal prosecutions but may search anywhere within reasonable bounds for other facts which tend to aggravate or mitigate the offense, including the moral character of the defendant, his habits, social environment, and motivations. (*People* v. *Faulkner,* 12 Ill.2d 176; *People* v. *Seger,* 405 Ill. 222; *People* v. *McWilliams,* 348 Ill.. 333.)" Similar to this is the statutory expression of section 1—7(g) of the Criminal Code which provides that: "For the purpose of determining sentence to be imposed, the court shall, after conviction, consider the evidence, if any, received upon the trial and shall also hear and receive evidence, if any, as to the moral character, life, family, occupation and criminal record of the offender and may consider such evidence in aggravation and mitigation of the offense." Ill. Rev. Stat. 1965, chap. 38, par. 1—7(g).

Plainly, a judge with the solemn responsibility of determining the punishment of the convicted is to be encouraged to hear and consider all available and pertinent information concerning the person and the crime, so as to enable him to impose a punishment which is appropriate. However, before relying on such information the judge must determine its accuracy (see *People* v. *O'Neil,* 18 Ill.2d 461, 466; *People* v. *Serrielle,* 354 Ill. 182), and he must take care to shield his mind from what might be the prejudicial effect of unreliable and other improper evidence. (See *People* v. *Riley,* 376 Ill. 364, 369.) If it is shown that the convicted has been prejudiced by the procedure adopted, or material considered by the trial court in conducting its inquiry prior to the imposition of punishment, the resultant

penalty will not be allowed to stand. *People* v. *McWilliams,* 348 Ill. 333; see *People* v. *Riley,* 376 Ill. 364, 371, 372.

Considerations governing the admissibility of a child's testimony during trial are applicable equally to a child's testimony in connection with the post-trial matter of sentencing. Generally, the trial court must conduct a preliminary in-person examination of a witness of doubtful competency, such as a child, to determine competency to testify. (*Shannon* v. *Swanson,* 208 Ill. 52; *People* v. *Enright,* 256 Ill. 221.) In *People* v. *Ballinger,* 36 Ill.2d 620, this court upheld a ruling that a 9-year-old sole eyewitness to the murder there concerned was competent to testify. We stated, commencing at 621, that: "The well-established rule is that it is not age but the degree of intelligence of a child which determines the question of his competency to testify, and if the witness is sufficiently mature to receive correct impressions by his senses, to recollect and narrate intelligently and to appreciate the moral duty to tell the truth, the witness is competent. *People* v. *Davis,* 10 Ill.2d 430."

Seven witnesses here gave testimony at the hearing in mitigation and aggravation, and all testified under oath. However the 4½-year-old child, Jeffrey, was not present at the hearing and so far as we can determine was never seen by the trial judge. The court had no opportunity to appraise his relative maturity or immaturity, his understanding or incapacity to understand the necessity that truth be told and to consider other qualities going to the question whether reliance could properly be placed on what he said or might say. Also, neither the caseworker nor the temporary foster mother was called and they apparently were not known by the trial judge. We do not mean in making this observation to impugn their veracity but we deem that in orderly procedure they should have been called and counsel for the defendant given the opportunity for cross-examination. Particularly, Jeffrey should have been avail-

able for examination by counsel, as well as by the court and State's Attorney. As related, we said in *People* v. *Mann,* 27 Ill.2d 135, that the trial court may search within reasonable bounds for facts in an inquiry relative to aggravation or mitigation. Here, the trial court's search passed such bounds and was improper.

We cannot determine what sentence might otherwise have been imposed and must vacate the sentence of death and remand the cause for resentencing. We have observed that a trial court typically is in a position superior to a reviewing court to determine a punishment which will be appropriate. (*People* v. *Taylor,* 33 Ill.2d 417.) This remanding, of course, is without prejudice to the right of the defendant, under former section 121—9(b)(4) of the Code of Criminal Procedure (now Rule 615(b)(4) of this court), to seek review of such punishment as the trial court may impose.

Accordingly, the judgment of conviction is affirmed, and the sentence is vacated and the cause is remanded to the circuit court of Kane County for resentencing.

*Judgment affirmed and cause remanded.*