THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE FRANK GLOVER, Defendant-Appellant.

(No. 73-156;

Second District—April 28, 1975.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Gerry Dondanville, State's Attorney, of Geneva (Clarence Wittenstrom, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE EAGLETON delivered the opinion of the court:

Willie Frank Glover, the defendant-appellant, was indicted for the offense of armed robbery. At a trial in Kane County before the Honorable John S. Petersen, he was found guilty by a jury and was sentenced to 5 to 20 years. In this appeal, he presents three issues:

1. Whether the evidence presented by the State was sufficient to prove the defendant guilty beyond a reasonable doubt;

2. Whether incompetent evidence before the court during the hearing on aggravation and mitigation prejudiced the defendant; and

3. Whether defendant's sentence violates provisions of the Unified Code of Corrections and should be reduced?

On January 9, 1972, between the hours of 10:30 and 11 P.M., a black man entered Shannon's Tavern in Montgomery, Illinois, sat at the far end of the bar, and got a drink. There were 12 to 14 other people in the bar and one bartender. Seconds later two black men entered, one with a shotgun, and ordered everybody on the floor. The first black man who had entered then jumped off of his stool, pulled a pistol and said, "You hear what he said." Wallets were taken from three men and a purse was taken from one woman. Two men were put in the beer cooler and at least two of the men in the bar and the bartender were struck on the head. One man had a cerebral concussion, lacerations and contusions. Five or six minutes after all three black men left, one of the women in the bar got up, let the men out of the cooler and called the police.

Defendant in the meantime had been waiting outside the tavern in his car with the motor running. One of the three black men, Ronald Watkins, the State's principal witness, testified that defendant had assisted in the planning of the offense and that he received a portion of the proceeds. Defendant himself denied all knowledge of the events which transpired inside of the tavern, asserting that he was only waiting in the car while one of the three men, Mr. Harston, bought a bottle of liquor. He further asserted that he became ill from drinking alcohol and "puked up" while waiting in the car for the others. When the three men emerged from the tavern they entered defendant's car, Harston told him to "take off," and they were driven away by him. The defendant drove his car around a curve and slid into something which damaged a wheel of his car. He then drove to the nearby apartment of the girl friend of the other man in the car, defendant's brother-in-law, Charles Passley. From there one Gus Williams was called and Williams picked the four men up and drove them to the defendant's house where the money was divided. Defendant told police and testified that he took no part in the division of the proceeds, but did see the other three with wallets, purses and money later at his house.

During the month of February 1972 witnesses at the tavern went to the Aurora Police Department to view photographs of possible suspects. Three of them identified Charles Passley; one identified Ronald Watkins; and two identified O. Z. Harston. No witness who had been inside the tavern identified the defendant as a participant.

## I

Defendant argues that there was insufficient proof of an essential element of guilt, namely, proof of a specific intent "to promote or facilitate" as required by section 5—2 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 5—2). To support this proposition he characterizes the accomplice testimony of Ronald Watkins as "uncorroborated." The record does not support such a characterization. Indeed, the defendant himself corroborates substantial portions of Watkins' testimony. The essential disagreements between their respective versions of the night's activities were whether the defendant participated in planning the crime, had prior knowledge of what the other three actually intended to do in the tavern, and shared in the loot.

■■ It is well settled that the court may review all the evidence to determine whether it shows the guilt of the defendant beyond a reasonable doubt; and where the record leaves the court with a grave and substantial doubt of the guilt of the defendant, judgment will be reversed. (*People v. Lewellen,* 43 Ill.2d 74, 78, 250 N.E.2d 651 (1969); *People v. Willson,* 401 Ill. 68, 73, 81 N.E.2d 485 (1948).) It is also well settled that certain questions, such as the weight of disputed evidence and the credibility of witnesses, are peculiarly within the province of a properly instructed jury. It is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the triers of fact, and we cannot reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. *People v. Nicholls,* 44 Ill.2d 533, 540, 256 N.E.2d 818 (1970); *People v. Novotny,* 41 Ill.2d 401, 412, 244 N.E.2d 182 (1968).

■■ Defendant relies primarily upon *People v. Hermens,* 5 Ill.2d 277, 125 N.E.2d 500 (1955). In *Hermens* the court found no corroboration of the accomplice and both the defendant *and another accomplice* testified the defendant did not participate in the crime, factors not present in the instant case. Furthermore, *Hermens,* at page 285, clearly stands for the traditional Illinois position that the testimony of an accomplice is necessarily received with caution, but such testimony, even if uncorroborated, is sufficient to warrant a conviction if it satisfies the trier of the fact beyond a reasonable doubt. *People v. Mentola,* 47 Ill.2d 579, 583, 268 N.E.2d 8 (1971), recently cites *Hermens* in exactly those terms.

A review of the record indicates the defendant was afforded a fair trial and the verdict of the jury was amply justified.

## II

At the hearing in aggravation and mitigation the sentencing judge

had a presentence investigation report consisting of some basic personal and family data, a short summary of previous sentences, the status of a pending forgery charge bound over to the grand jury, and attached "rap sheets" (containing 67 entries in less than 6 years of varying degrees of import) from the Aurora Police Department, the Illinois Bureau of Identification and the Federal Bureau of Identification. The sentencing court obviously had before him references to numerous charges and arrests from the report that were neither supported by conviction nor admitted criminal conduct by the defendant. A simple answer to defendant's charge of prejudice in sentencing would be to merely acknowledge that we "must presume that the trial judge in this case recognized any incompetent evidence introduced at the pre-sentence hearing and disregarded it" (*People v. Fuca*, 43 Ill.2d 182, 186, 251 N.E.2d 239 (1969)).

■■ But much like *People v. Spicer*, 47 Ill.2d 114, 119, 264 N.E.2d 181 (1970), here there is no need to rely upon that presumption. The record reflects a conscientious effort by the judge to sentence properly.

Defendant's retained counsel received a copy of the presentence report before the hearing, presented no evidence in mitigation until the court invited Mrs. Glover to testify, effectively argued in his client's behalf by clearly pointing out that he had some minor offenses but no prior felony conviction, and did not object to the court's brief questioning of the defendant and his wife. The court's questions show an effort to clarify matters in the report before pronouncing sentence.

Reference to a pending charge does not itself show prejudice. (*People v. Bey*, 51 Ill.2d 262, 267, 281 N.E.2d 638 (1972).) Defendant, in his brief, emphasizes that after the defendant denied forging the check the court replied, "That is what you say." Considering the fact of a bindover, this merely indicates the court recognized a pending dispute of fact; and in the absence of an objection at the time by defense counsel, we must conclude that he detected no prejudice in the remark. The sentence itself shows no prejudice, the 5 years being the minimum then available. The maximum term of 20 years provides public protection if the defendant later violates parole, a significant sentencing factor considering the defendant's history and character.

There being in the record no "definitive indication" the sentence was based on prejudicial considerations (*People v. Gaines*, 21 Ill.App.3d 839, 848, 316 N.E.2d 14 (1st Dist., 3rd Div., 1974)), resentencing before a different trial judge is not required here.

### III

■■ This prosecution not having reached final adjudication before the effective date of the Illinois Unified Code of Corrections, the minimum

term here of 5 years must be reconsidered. (Ill. Rev. Stat. 1973, ch. 38, par. 1008—2—4; *People v. Chupich*, 53 Ill.2d 572, 295 N.E.2d 1 (1973); *People v. Harvey*, 53 Ill.2d 585, 590, 294 N.E.2d 269 (1973); *People v. Taylor*, 58 Ill.2d 69, 79, 317 N.E.2d 97 (1974).) Normally the case would be remanded for resentencing in accordance with the new provisions of the Code. (*People v. Fuller*, 17 Ill.App.3d 1005, 1008, 309 N.E.2d 96 (2d Dist. 1974).) Under appropriate circumstances the reviewing court will modify the sentence and remand only for the issuance of a corrected *mittimus* (see *People v. Hardaman*, 59 Ill.2d 155, 157, 319 N.E.2d 800 (1974)).

■■ The judge here stated at the outset of his sentencing order that the "defendant is sentenced to serve not less than four years nor more than twenty years * * *." The prosecutor then said, "Your Honor, may I suggest to the court the statutory minimum to this is five, not four," and the court replied, "I beg your pardon, 5 to 20 years." Thus the record shows the court intended to impose the then statutory minimum and a remand for resentencing is unnecessary. The lowest current minimum term for armed robbery under the Code is 4 years. (Ill. Rev. Stat. 1973, ch. 38, pars. 18—2(b), 1005—8—1(c)(2).) The minimum term of this sentence, therefore, should be reduced to 4 years and the maximum term should remain at 20 years.

The cause is remanded to the Circuit Court of Kane County with directions to issue a corrected *mittimus* in conformance with this opinion.

Judgment modified and affirmed; cause remanded, with directions.

CREBS and EBERSPACHER, JJ., concur.