THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM R. VAUGHN, Defendant-Appellant.

Fifth District   No. 76-422

Opinion filed January 10, 1978.

KARNS, J., dissenting.

Michael J. Rosborough and Michael Yovovich, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and Martin N. Ashley, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE CARTER delivered the opinion of the court:

The defendant, William R. Vaughn, was convicted at a jury trial of deviate sexual assault (Ill. Rev. Stat. 1975, ch. 38, par. 11—3). The trial judge entered judgment on the jury verdict and sentenced the defendant

to an indeterminate sentence of not less than four nor more than 40 years.

The defendant in this appeal contends as follows: (1)·that the defendant was unduly restricted in presenting his defense because the trial court refused to admit the testimony of a key defense witness; (2) that the defendant should have been permitted to cross-examine the complaining witness concerning any prior sexual contacts between herself and the defendant; (3) that the trial court erred in admitting a seven-year-old petty larceny conviction as impeachment evidence against the defendant; (4) that the trial court considered incompetent and prejudicial evidence in sentencing the defendant.

We affirm the conviction but reduce the sentence.

According to the complaining witness, she arrived at her apartment at 12:45 a.m. that evening after getting off work. After she had taken a shower and put on her nightgown, she heard a knock at the door. The defendant wanted to come in to tell her about a possible job opening. After discussing this secretarial position while she continued to roll her hair, the defendant stood up as if to leave but instead reached under her gown to grab her leg. When the complaining witness attempted to stop him, he began choking her and ordered her to remove her clothes. She testified that she could not remember taking off her gown and may have blacked out. The defendant unsuccessfully attempted intercourse twice and made her perform two acts of fellatio. The complaining witness admitted that she had first met the defendant in a bar, had seen him on several other occasions, and had asked him to come to her apartment when she was having roommate problems.

Immediately after the defendant left her apartment that night, the complaining witness called her parents and told them that she had been raped. Her parents drove her to the hospital where she was examined by a physician. The physician testified that he found no bruises or other external injuries. While no sperm were present in the vagina, the physician did find the presence of acid phosphates. According to the doctor, acid phosphates are produced by the male prostate gland, and disintegrate within 24 hours after intercourse. The doctor stated that a small amount of acid phosphates, as in this case, would be present if the man had penetrated but had not ejaculated. The victim had told the doctor that she had not had intercourse within the previous 48 hours. The doctor stated that if a person were being choked from the front, there may be no bruises present and that this could cause a temporary black-out.

The defendant testified that he went to the complaining witness' apartment that night to tell her about a new secretarial position. After sitting on the floor and playing with her dog for about 10 minutes, he left without touching her. He stated that he quit seeing the complaining

witness because he was dating another woman. He also stated, however, that he and the complainant had never really dated.

The defendant's theory of defense is that the complaining witness had manufactured the whole story because he had rejected her and was seeing another woman. His theory is that the complainant is a mentally unstable woman who receives personal satisfaction from falsely accusing men of rape. In support of this theory, the defendant made an offer of proof concerning the testimony of Robert Cherry. According to Mr. Cherry, he had met the witness at a Christmas party and had returned to her apartment with her. While they were lying on the floor kissing and fondling each other, she began to help him get undressed. When he attempted intercourse, she refused. According to Mr. Cherry, the complaining witness had told him that she had "put three men away for this." He then got dressed and left.

The trial court held that this testimony did not tend to prove that the complainant had ever falsely charged a man with rape but only showed that she had threatened to do so. Without proof that she had filed previous rape charges, this evidence did not prove her propensity to falsely cry rape. The trial court held that this testimony was an attempt to damage the character and reputation of the victim even though the defense in this case was not consent.

■■ The issue of whether Mr. Cherry's testimony should have been admitted depends upon whether this testimony tends to prove or disprove any matter in issue. In *People v. Monroe*, 66 Ill. 2d 317, 322, 362 N.E.2d 295, the supreme court recently attempted to define the elusive concept of relevancy. Quoting from the Federal Rules of Evidence, it stated: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The notes of the Advisory Committee state: "Problems of relevancy call for an answer to the question whether an item of evidence, when tested by the processes of legal reasoning, possesses sufficient probative value to justify receiving it in evidence. * * *" *People v. Monroe*, 66 Ill. 2d 317, 322, 362 N.E.2d 295, 297.

We agree with the trial court that Mr. Cherry's testimony does not tend to prove that the complaining witness is prone to falsely accuse a man of rape without proof that she had ever carried out such a threat. The primary purpose of this testimony was to attack her sexual reputation, a matter which was not in issue.

■■ ■ The prior sexual contact between the defendant and the complaining witness is arguably relevant to the complaining witness' motive to falsely charge the defendant with rape. In this case, the

defendant, however, failed to make an offer of proof that there had ever been any prior sexual relationship between the defendant and the complaining witness. Furthermore, the defendant failed to raise this issue in his post-trial motion. In *People v. Hammond*, 48 Ill. App. 3d 707, 362 N.E.2d 361, we stated: "It has been well established that the failure to raise an issue in a written post-trial motion constitutes generally a waiver of that issue. (*People v. Pickett*, 54 Ill. 2d 280, 296 N.E.2d 856, * * *.)"

■■   A much more difficult issue to resolve is the question of whether a seven-year-old petty larceny conviction should have been admitted to impeach the credibility of the defendant. In *People v. Montgomery*, 47 Ill. 2d 510, 268 N.E.2d 295, the supreme court specifically adopted proposed Rule 609 of the Federal Rules of Evidence. This rule, as quoted in *Montgomery*, states: "(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law  under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice." (*People v. Montgomery*, 47 Ill. 2d 510, 516, 268 N.E.2d 295.) We note that when this suggested rule 609 was enacted into law by Congress the third subsection was deleted and the wording of the first was changed to read "shall be admitted." Thus, the present Federal rule allows the trial judge no discretion in admitting a prior conviction. Since the Illinois Supreme Court specifically followed the proposed rule, we cannot presume that they would choose to follow the current federal rule which eliminates judicial discretion.

■■   Since petty larceny is not punishable by more than one year, the question is whether it is a crime involving "dishonesty or false statement" within the meaning of the statute. Several Illinois Appellate Court cases have held that a misdemeanor theft is admissible for  impeachment purposes. (*People v. Ray*, 36 Ill. App. 3d 283, 343 N.E.2d 560; *People v. Randolph*, 50 Ill. App. 3d 559, 365 N.E.2d 930.) As Justice McGloon noted in his dissent in *People v. Randolph*, the Editorial Comments to Rule 609(a) state:

> "The phrase 'dishonesty [or] false statement' denotes crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretenses, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing upon the accused's propensity to testify truthfully." (28 USCS Appendix Federal Rules of Evidence, Editorial Comment §609.1.)

Several Federal cases have held that this rule is meant to cover crimes involving testimonial or verbal deceit. (*Government of the Virgin Islands v. Testamark*, (3d Cir. 1976), 528 F.2d 742; *Government of the Virgin Islands v. Toto* (3d Cir. 1976), 529 F.2d 278.) We agree with Judge McGloon's dissent in *Rudolph* that a petty larceny conviction does not involve testimonial dishonesty and should not be used for impeachment. Furthermore, we note that the Illinois Supreme Court recently held that criminal trespass to a motor vehicle is not a crime involving dishonesty and should not be used for impeachment. *Knowles v. Panopoulos*, 66 Ill. 2d 585, 363 N.E.2d 805.

Even if we were to follow the view that petty larceny is a crime involving dishonesty, we believe that this conviction should not have been admitted, because it was too remote. The defendant was convicted of petty larceny seven years before this crime when he was only 19 years old. He had not been convicted of any other crime in the interim. While rule 609 set the outer limit of 10 years on the admissibility of a prior conviction, Justice Schaefer in *Montgomery* at page 518 quotes from *Gordon v. United States* (D.C. Cir. 1967), 383 F.2d 936, the various factors to be considered by the trial court in making a determination of admissibility: "The nature of the crime, nearness or remoteness, the subsequent career of the person, and whether the crime was similar to the one charged."

■■ Although we believe that this prior conviction should not have been admitted, we do not believe that this evidence would have influenced the jury verdict. The jury would have also been aware that this was a seven-year-old conviction of a man who was a youth at the time.

We do agree with the defendant that the trial court considered some extremely unreliable and improper evidence at his sentencing hearing. Along with the conviction of petty larceny, some undefined authority at the Tennessee penal farm where defendant had served his misdemeanor sentence had classified all of the prisoners by their apparent personalities. The defendant was classified, along with over half of the other prisoners, as a "sociopath." Besides being seven years old, this report contained no indication of who had prepared this report, the qualifications of the person responsible for the report, or the time they spent with the individual prisoners. "Plainly, a judge with the solemn responsibility of determining the punishment of the convicted is to be encouraged to hear and consider all available and pertinent information concerning the person and the crime, so as to enable him to impose a punishment which is appropriate. However, before relying upon such information the judge must determine its accuracy [citations], and he must take care to shield his mind from what might be the prejudicial effect of unreliable and other improper evidence. [Citation.]" (*People v. Crews*, 38 Ill. 2d 331, 337, 231

N.E.2d 451.) Clearly, this report should not have been considered by the trial court.

■■ Furthermore, in sentencing the defendant, the trial court also considered a 1975 Maine grand jury indictment for rape. The Maine authorities indicated in a letter that they did not intend to extradite the defendant if he were sentenced in Illinois. The State cites three cases in support of its statement that proof of a pending indictment is admissible evidence in aggravation at a sentencing hearing. We believe these three cases are distinguishable from the case at issue. In *People v. Glover*, 27 Ill. App. 3d 827, 327 N.E.2d 310, 313, the appellate court held that the trial judge did not take the pending indictments and previous arrests into consideration in his sentencing. In *People v. Tolefree*, 14 Ill. App. 3d 754, 303 N.E.2d 555, 556, the State was permitted to introduce the previous indictment to show that the defendant committed the crime for which he was being sentenced while on bail. In *People v. Jones*, 36 Ill. App. 3d 491, 344 N.E.2d 40, 42, the alleged victim in the prior indictment appeared in court and testified. The appellate court pointed out that the evidence was not incompetent as rank hearsay and could be considered in evaluating the defendant's rehabilitative potential. In contrast to *Jones*, the trial judge in this case considered an indictment which the prosecuting authorities indicated that they did not intend to pursue. Without any proof of the underlying circumstances, this indictment amounts to an unproven accusation and should not be given any greater weight than an arrest. *People v. Pohle*, 19 Ill. App. 3d 400, 311 N.E.2d 731.

In assessing the defendant's rehabilitative potential, the trial judge stated that the defendant had had an unsatisfactory relationship with his mother which prevented him from having stable relationships with other women. This psychological analysis of the defendant's personality had no basis in any evidence presented and amounted to pure speculation.

In mitigation, the defendant presented numerous character witnesses. He was currently employed as a manager of a business establishment and had close family ties in the area. The defendant's only prior conviction was a seven-year-old petty larceny conviction.

■■ In *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, the court recently held that the appellate court does not have the power to reduce sentences absent a clear abuse of discretion. In this case, the trial court did abuse its discretion by considering incompetent and prejudicial evidence. The trial court clearly relied upon the Maine indictment in his sentencing of the defendant and placed some reliance on the stale and unsubstantiated Tennessee report. Pursuant to Supreme Court Rule 615(b)(4), we, therefore, reduce the defendant's sentence to not more than four nor greater than 10 years.

For the above reasons, we affirm the judgment of the Circuit Court of

Williamson County but reduce the sentence to a term of not less than four years nor greater than 10 years.

Judgment affirmed as modified.

EBERSPACHER, J., concurs.

Mr. JUSTICE KARNS, dissenting:
I agree with the majority that Vaughn's conviction for petty larceny should not have been admitted in evidence. I cannot agree that the admission of this evidence was harmless error and that the verdict of the jury could not have been influenced thereby.