THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EDWARD ANDREW KIMPEL III, Defendant-Appellant.

Third District   No. 78-349

Opinion filed December 7, 1979.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Patrick J. Corcoran, State's Attorney, of Carthage (John X. Breslin and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Following a jury trial defendant Edward Andrew Kimpel III was found guilty of murder and was sentenced to 40 years imprisonment. The only issues upon appeal pertain to the sentencing hearing.

At the time of sentencing, defendant moved to strike several psychological evaluations which were attached to the presentence report. At the time of his conviction, defendant was 46 years of age and had been convicted of nine prior offenses beginning in 1946 at age 15. Three of the psychological evaluations in question were prepared by counsellors at Patuxent Institute in Maryland where defendant was incarcerated from 1956 until 1962. These evaluations were dated 1957, 1959, and 1960, and each included a discussion of defendant's psychological problems based upon tests and an interview. Each one concluded that he was capable of violent behavior and that his conduct could be expected to become progressively worse. The trial court denied the motion to strike these reports, as well as some later reports not involved in this appeal, and then permitted defendant to introduce evidence to refute the accuracy of these reports.

Defendant testified at length concerning these evaluations. He denied that he had provided any information which would support the conclusions of the interviewers, and he challenged particular findings as erroneous. For example, he disputed a 1957 finding that his IQ was 114. He reminded the court that his IQ was reported to be over 140 at a pretrial competency hearing, and then he stated, "I function at a higher level than 114." He also disputed statements that he lacked effective relationships at home, that he suffered from an oedipal complex, and that he was manipulative. He also pointed out the inconsistency between the conclusion that he was potentially violent and the authorization in 1960 allowing him to attend classes at the University of Maryland during the day and to return to Patuxent Institute in the evening. (We note that in 1962 he failed to return and remained at large for 12 years.)

Following defendant's testimony, the motion to strike was renewed and again denied. The State presented no evidence in aggravation. The trial court then heard evidence in mitigation at which point defendant again testified, explaining in some detail the circumstances surrounding his shooting of Patricia Hull. He stated he is an epileptic and an alcoholic, that he becomes paranoid when he is drunk, that he has been hospitalized nine times for acute alcoholism, and that he was in an "alcoholic blackout" at the time of the murder.

At the conclusion of the sentencing hearing the trial court explained that defendant had the right to elect to be sentenced under the sentencing provisions in effect after February 1, 1978, or those in effect prior to that date. The court further explained the provisions of the two statutes and then allowed defendant time to confer with his counsel. After being assured by both defendant and his attorney that defendant fully understood the penalty under each law, the court inquired as to defendant's choice. Defendant elected to be sentenced under the new

law, and the court then imposed a maximum sentence of 40 years. In announcing sentence the judge discussed the circumstances of the offense and the seriousness of the injury inflicted, defendant's prior history of delinquency and criminality, and the fact that a greater than minimum sentence would be necessary to deter others from committing the same crime.

On appeal defendant first contends that the trial court erred when it refused to strike the three psychological evaluations dated 1957, 1959, and 1960. In support of his contention defendant cites *People v. Vaughn* (1978), 56 Ill. App. 3d 700, 371 N.E.2d 1248, where a 7-year-old Tennessee prison report classifying the defendant as a "Sociopath" was held to have been improperly considered at the sentencing hearing. Defendant also relies upon *People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451, where the trial judge had stated, before announcing a sentence of death, that he had read a juvenile caseworker's report recounting statements attributed to the defendant's 4½-year-old son which described previous mistreatment of the 2-year-old murder victim. The supreme court observed that clearly the trial judge was influenced by the report, and then stated:

> "Plainly, a judge with the solemn responsibility of determining the punishment of the convicted is to be encouraged to hear and consider all available and pertinent information concerning the person and the crime, so as to enable him to impose a punishment which is appropriate. However, before relying on such information the judge must determine its accuracy [citation], and he must take care to shield his mind from what might be the prejudicial effect of unreliable and other improper evidence. [Citation.] If it is shown that the convicted has been prejudiced by the procedure adopted, or material considered by the trial court in conducting its inquiry prior to the imposition of punishment, the resultant penalty will not be allowed to stand." (38 Ill. 2d 331, 337-38.)

Defendant argues that here the trial court should have stricken the reports because the only evidence received by the court on the issue of their reliability was defendant's testimony that the reports were inaccurate and that the conclusions were false.

The Unified Code of Corrections provides that, where a defendant is convicted of a felony, a written presentence report of investigation must be presented to and considered by the court unless waived by defendant. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—3—1.) This report is to be considered at the sentencing hearing (Ill. Rev. Stat. 1977, ch. 38, par. 1005—4—1(a)(2)) and must include information concerning defendant's physical and mental history and condition, history of delinquency or

criminality, and other matters deemed relevant (Ill. Rev. Stat. 1977, ch. 38, par. 1005—3—2(a)). In some cases the sentencing procedure has been challenged on the ground that the State has introduced unsubstantiated evidence indicating other criminal conduct, and in those cases, it has been held that the accuracy and reliability of such evidence must be established and that defendant is entitled to cross-examine persons with first hand knowledge of the supposed criminal activity. (See, *e.g., People v. Kirk* (1978), 62 Ill. App. 3d 49, 378 N.E.2d 795.) However, we note that here the disputed reports do not involve evidence of prior crimes.

■■ ■ In the instant case we are not persuaded that the reports were improperly received, but even if the trial court did err in admitting these reports into evidence, such error would not be reversible because there is no reason for concluding that defendant was prejudiced by the disputed material. As was said in *People v. Wilson* (1973), 11 Ill. App. 3d 693, 696, 297 N.E.2d 277, 279:

> "[T]he mere fact that a trial judge, before imposing sentence, is aware of certain inadmissible facts does not automatically insure a reversal of that sentence. The function of a reviewing court is not to determine whether the record is perfect, but to determine whether defendant had a fair trial. Where it can be said from the record that an error complained of could not reasonably have affected the result of the trial, the judgment of the trial court will be affirmed."

In fact, it has been said that there must be a "definitive indication" that the court considered the improper evidence. (*People v. Gaines* (1974), 21 Ill. App. 3d 839, 316 N.E.2d 14.) In the case at bar there is no indication that the trial court took into account the psychological evaluations in determining the sentence since the court did not mention them in announcing sentence.

■■ Certainly, there was ample competent evidence in the record to support the 40-year sentence which was imposed. Defendant shot the 20-year-old victim twice in the back of the head, just above the neck. Defendant, who was 46 years of age, had an extensive record of delinquency and criminal convictions dating back to 1946. These were among the factors mentioned by the trial judge in announcing sentence, and we believe the sentence was appropriate under the circumstances.

■■ Defendant also asserts that the trial court erred when explaining the choice between being sentenced under the prior law or the law in effect after February 1, 1978, by failing to inform the defendant of the possibility of parole under the sentencing laws in effect prior to February 1, 1978.

The trial judge fully explained the provisions of each sentencing scheme except the matter of parole availability under the old law, and the

record establishes that prior to making an election, defendant was granted a five-minute recess to discuss the election with his counsel. We have previously held that when the record establishes that defendant has discussed the alternatives with his counsel, in the absence of a contention of inadequate counsel or an indication that defendant misunderstood the consequences of his decision, the failure of the trial court to explain the range of available sentences is not error. (*People v. Hackett* (1979), 77 Ill. App. 3d 877, 396 N.E.2d 820.) The rationale underlying this rule is that the primary responsibility of advising the defendant as to the differences between the sentencing laws lies with the defense counsel. (See *People v. Peoples* (1979), 71 Ill. App. 3d 842, 390 N.E.2d 554.) Similarly, under the circumstances present here, the failure to explain parole availability was not error.

For the reasons stated, the judgment of the Circuit Court of Hancock County is affirmed.

Affirmed.

STOUDER, P. J., and ALLOY, J., concur.