THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN GORNEY, JR., Defendant-Appellant.

Third District   No. 3—83—0409

Opinion filed January 19, 1984.

Robert Agostinelli and Thomas A. Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

After trial by jury in the county of Will, the defendant, John Gorney, Jr., was convicted of the offense of home invasion, attempt rape and aggravated battery. The defendant was sentenced to concurrent terms of imprisonment of 14 years for home invasion, five years for attempt rape and five years for aggravated battery.

The evidence at the trial of this case was highly conflicting. The key witness for the defense was the accused defendant while the alleged victim, Patricia Woods, was the key witness for the State.

Patricia Woods, age 28, married, and mother of four children, and the 20-year-old unmarried defendant and his family lived in the same neighborhood. It was Patricia's testimony that on October 16, 1981, after 9:30 p.m. she and her children were at home. After putting the children to bed, Patricia retired at 11:15 p.m. Her bedroom was on the upper level of the house. After falling asleep, she was awakened

by a cold hand across her face and pressure, apparently from a knee, in the middle of her back. She was told not to move or scream or she would be killed. She heard something unzipping and when she rolled over in an effort to escape, a man straddled her and pinned her legs with his feet. The man had a nylon stocking over his face. Patricia struggled, but the man was able to partially pull her nightgown down when she was able to pull the stocking off his face. Patricia recognized the defendant, yelled his name, after which he began punching her in the face. The sleeping children were awakened, one of whom turned on a light, and departed for help while another turned on a light and screamed. The struggle between Patricia and the defendant continued as he persisted in his efforts to try and undress her and to have intercourse with her.

Shortly before midnight Patricia's husband returned home from work and when the defendant attempted to flee a fight ensued between the men which resulted in the defendant being subdued and detained until the police arrived.

The defendant's testimony was such as to raise the defense that he was intending to have intercourse with Patricia on October 16, 1981, with her consent as he had done on previous occasions. The defendant testified that commencing in June 1980 he became involved with Patricia. At first they engaged in kissing, hugging and fondling but this led to acts of sexual intercourse on occasions when Patricia's husband was working. The defendant testified as to various degrees of intimacy with Patricia which occurred at an engagement party, a swimming party, and at nighttime meetings on the front porch of Patricia's house. The defendant's version of the October 16 incident was that he was with Patricia in her bedroom with her consent and as they were disrobing and preparing to have intercourse they were alarmed when they heard a car pull into the driveway. That knowing the car to be that of Patricia's husband, they both attempted to put on their clothes. However when the front door opened, Patricia began screaming and the fight and subduing of the defendant by the husband occurred. The defendant denied striking Patricia, threatening her or exerting any force upon her. He denied that he was masked.

Additional evidence adduced at the trial was that a screen on a window in Patricia's room had been cut and a razor blade was found in the defendant's possession. Defendant claimed that the blade was used to clean car windows at the car dealership where he worked. A pair of panty hose was found in the bed; however, it was never established that they were Patricia's or that they were brought to the room by the defendant.

The defendant's sister testified that in a conversation with Patricia, she (Patricia) indicated that she had engaged in sexual intercourse with the defendant. Judy Carnes, who attended an engagement party, testified that when the party was ending she heard Patricia offer the defendant another beer and at that time Patricia was wearing a negligee.

Further facts and occurrences during the trial will be set forth as the same becomes pertinent to this appeal.

The defendant raises several issues in this appeal. The first of which is that he was denied a fair trial and his right to confront witnesses against him when the trial court blocked his attempt to impeach the credibility of Patricia, thereby preventing him from presenting evidence which would show Patricia's proclivity for making false claims of rape.

During the course of the trial and outside the presence of the jury defense counsel indicated that he wanted to present evidence from Judy Carnes and the defendant himself about an incident which occurred prior to October 1981. Defense counsel stated that the evidence would be as follows:

"I believe it was after the engagement party that we have talked about before, Judge, that Mrs. Woods gave 11:30 that evening. There were a group of people standing on the porch. Mrs. Woods was there, and John Gorney was there, Colleen O'Hara was there, Judy Carnes was there, and there were some speeders coming down the street, and one of the boy's names was Greg Bell (Phonetic), and there was a discussion to call the police, and then Mrs. Woods stated that she should call the police and say that the Bell boy tried to rape her in order to get even with him, and then she said that John Gorney could rip her nightgown to make it look authentic."

The trial excluded this proffered evidence on the grounds that it was irrelevant.

The State, in its brief, argues *inter alia* that the proffered evidence would be excludable under the rape-shield provision (Ill. Rev. Stat. 1981, ch. 38, par. 115—7); however, during oral argument it was conceded that this statutory provision would not bar the introduction of the evidence. The main thrust of the State's argument in support of the trial court's ruling is that the excluded testimony did not tend to prove that Patricia had ever falsely charged any man with rape but only showed that she threatened to do so. This is the reasoning set forth in the case of *People v. Vaughn* (1978), 56 Ill. App. 3d 700, 371 N.E.2d 1248, where a victim after engaging in kissing and fondling

with an accused and assisting him in undressing then resisted his attempted intercourse and stated she had "put three men away for this."

We quarrel not with the decision in *Vaughn*, but we are not satisfied that it is applicable to the situation presented in the instant case which presents a clear divergence between the evidence presented by the State and that presented by the defendant. In the statement made by counsel for the defendant it should be noted that Patricia made her observation that she could get even with a boy by informing the police that the boy had tried to rape her and that such statement was made in the presence of three people, to wit, the defendant, Colleen O'Hara, and Judy Carnes. The latter individual did testify that at the engagement party after guests had departed Patricia was alone with the defendant clad only in her negligee.

The courts have repeatedly observed that sex charges are easy to make and hard to disprove. In the instant case, we are confronted with a situation where the testimony of the alleged victim and that of the accused is in its totality conflicting. The defendant's defense theory was that he had a consensual relationship with Patricia and consequently the creditability of her testimony was an extremely critical question to be determined by the jury. The possession of a razor blade by the defendant and the cut window screen detract from the creditability of the defendant's testimony, but on the other side of the case, you have the testimony of Judy Carnes to the effect that after all guests (except the defendant) had left a party she saw Patricia in her negligee offering the defendant a beer. In view of such conflicting evidence and the gravity of the alleged act and its consequences to the defendant if proved, we are of the opinion that in the instant case the proffered testimony of the defendant as to Patricia's penchant or proclivity for making false claims of rape should have been admitted. An examination of the proffered testimony disclosed that its authenticity could have been easily proved or disproved. For in the statement are names of disinterested witnesses, namely Colleen O'Hara and Judy Carnes, who could have verified the fact that Patricia did or did not make the statement that she could get even with a boy named Greg Bell by claiming that he had tried to rape her and that the defendant could assist her by ripping her nightgown.

As previously noted, the State relies on the *Vaughn* case in support of the trial court's ruling against the admission of defendant's testimony which he offered to support his defense of a consensual relationship and which could have the effect of impeaching the testimony of the complainant Patricia. The defendant in support of his

contention that the trial court's ruling was erroneous cites the case of *People v. McClure* (1976), 42 Ill. App. 3d 952, 356 N.E.2d 899. In *McClure*, in the trial of a defendant charged with rape, it was held that the trial court committed error when it refused to permit a defense witness to testify that seven years earlier the alleged victim had accused the witness of rape when he had refused to pay after having had sexual intercourse with her since such evidence would indicate the victims predeliction under certain circumstance to charge men with rape. The reviewing court in *McClure* did, however, hold the error to be harmless since the defendant was not found guilty of the rape charge.

Other cases are cited by both the State and the defense in support of their respective contentions; however, they respectively rely heavily on the cases of *Vaughn* and *McClure*. Each of these cases involved a defendant charged with rape and each presented a situation similar to that in the instant case. The reviewing courts in *Vaughn* and *McClure* reached different results.

Turning to other jurisdictions, we examine the case of *People v. Hurlburt* (1958), 166 Cal. App. 2d 334, 333 P.2d 82. In *Hurlburt* a District Court of Appeals in California recognized that evidence of a prior false accusation made by an alleged victim of an illegal sexual act should be admitted since it is offered to disprove the very charge against the defendant who is before the trial court. See also *State v. Baron* (1982), 51 N.C. App. 150, 292 S.E.2d 741, *Commonwealth v. Joyce* (1981), ___ Mass. ___, 415 N.E.2d 181, and *State v. McCarthy* (1982), ___ R.I. ___, 446 A.2d 1034.

The evidence before the trial court in the instant case could be characterized as a "stand off." The jury found the defendant guilty but would the result have been the same if the defendant's proffered testimony had been admitted? That question is unanswerable, but the better practice would have been to have admitted it. If believed it would have impeached Patricia's testimony but of more importance its probative value was such as to prove or disprove the theory of the defendant's defense. While not wanting to belabor the point, we nevertheless are strongly of the opinion that the chances of a jury verdict being correct will definitely be enhanced if the jury has before it the fact that the complainant in a rape case had on an occasion in the past made or threatened to make a like charge against another individual even though there was no basis for such a charge.

Having concluded that reversible error was committed by denying defendant's testimony as to Patricia's proclivity for making false claims of rape, it is necessary that this case be reversed and re-

manded for a new trial and hence other issues raised in this appeal relating to convictions, sentencing and restitution need not be determined.

Reversed and remanded.

STOUDER, P.J., and ALLOY, J., concur.