ALYSSA B., Appellant,

v.

STATE of Alaska, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, Appellee.

No. S–11378.

Supreme Court of Alaska.

Aug. 5, 2005.

Rehearing Denied Nov. 22, 2005.

Kathleen A. Murphy, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Michael G. Hotchkin, Assistant Attorney General, Anchorage, and David W. Marquez, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

1. "Alyssa B." is a pseudonym.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Alyssa B.[1] argues that the superior court erred by denying her request for a jury trial during adjudication of the question whether her daughter was a child in need of aid, and by ordering Alyssa to undergo a pre-adjudication psychological evaluation. We affirm. There is no right to a jury trial in child-in-need-of-aid (CINA) proceedings and it was not an abuse of discretion to order a psychological evaluation in this case.

## II. FACTS AND PROCEEDINGS

In May 2002 Superior Court Judge Eric Smith found probable cause to believe that Alyssa B.'s daughter was a child in need of aid and ordered that the child be committed to the temporary custody of the Alaska Department of Health and Social Services. The department discontinued visitation between Alyssa and her daughter that summer due to Alyssa's misbehavior during visits. The department informed Alyssa that she would need to undergo a psychological evaluation because it believed she had a mental illness. The department filed an amended petition in March 2003 seeking an adjudication that Alyssa's daughter was a child in need of aid; the petition alleged in part that Alyssa "suffers from a mental illness or a[n] emotional disturbance that places the child at substantial risk of physical harm or mental injury."

Alyssa requested a jury trial for the adjudication hearing. She also asked the superior court to find that the department had abused its discretion by requiring her to undergo a psychological evaluation before it would allow her to resume visitation with her daughter. The superior court denied Alyssa's request for a jury trial and granted the department's cross-motion requesting that Alyssa be ordered to submit to a psychological evaluation. Following the adjudication hearing, the superior court held that Alyssa's daughter was a child in need of aid. The superior court entered a disposition order in

January 2004 committing Alyssa's daughter to the department's custody.

Alyssa appeals.[2]

## III. DISCUSSION

### A. Standard of Review

■ Denial of a motion for a jury trial raises a question of law that we review de novo.[3] We review constitutional questions using our independent judgment and adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[4] We exercise our independent judgment when interpreting Alaska's procedural rules,[5] including the CINA rules. Whether a trial court has the authority to require a party to submit to a psychological evaluation presents an issue of law that we review exercising our independent judgment.[6] We review an order requiring a party to participate in a psychological examination under Alaska Civil Rule 35(a) for abuse of discretion.[7]

### B. There Is No Right to a Jury Trial in CINA Proceedings in Alaska.

■ Alyssa argues that she was entitled to a jury trial at the CINA adjudication hearing under either article I, section 16 of the Alaska Constitution or the due process clause in article I, section 7 of the Alaska Constitution.

#### 1. Article I, section 16

Article I, section 16 of the Alaska Constitution provides in relevant part: "In civil cases where the amount in controversy exceeds two hundred fifty dollars, the right of trial by a jury of twelve is preserved to the same extent as it existed at common law." "We have recognized that the termination of parental rights did not exist at common law."[8] The department refers us to the territorial child protection statute, which stated that "[p]roceedings under this Act shall be without jury."[9] Moreover, "[t]he Alaska Constitution preserves a jury trial only for those causes of action which are legal, and not equitable in nature."[10] Child protection cases have historically been treated as matters of equity in Alaska.[11] The vast weight of authority from other jurisdictions also treats actions relating to child protection as equitable in nature.[12] We therefore conclude

---

2. Alyssa does not appeal entry of the disposition order.

3. *Riddell v. Edwards,* 32 P.3d 4, 7 (Alaska 2001).

4. *Treacy v. Municipality of Anchorage,* 91 P.3d 252, 260 (Alaska 2004).

5. *See Airoulofski v. State,* 922 P.2d 889, 892 (Alaska 1996) (applying independent judgment standard to interpretation of Alaska's Civil Rules). "We exercise our independent judgment when interpreting a civil rule." *S.S.M. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.,* 3 P.3d 342, 344 (Alaska 2000).

6. *Cf. State, Dep't of Revenue v. Deleon,* 103 P.3d 897, 898 (Alaska 2004) (holding that whether superior court had "authority to order a delinquent parent to apply for a permanent fund dividend to enforce a child support order" was question of law).

7. *See Dingeman v. Dingeman,* 865 P.2d 94, 98–99 (Alaska 1993).

8. *Alden H. v. State, Office of Children's Servs.,* 108 P.3d 224, 228 (Alaska 2005).

9. § 51–3–10 Alaska Compiled Laws Annotated (ACLA) 1949.

10. *McGill v. Wahl,* 839 P.2d 393, 396 (Alaska 1992).

11. The department refers us to the pre-statehood case of *Clegg v. Abood,* 13 Alaska 187 (D.Alaska 1951). The court there stated that "[i]t is well established that a court of equity has inherent power and jurisdiction in all proceedings involving the custody of minor children." *Id.* at 190.

12. *See, e.g., In re Lambert,* 203 F.2d 607, 609 (D.C.Cir.1953) ("Proceedings concerning the custody of children have always been equity proceedings."); *In the Interest of E.J.R.,* 400 N.W.2d 531, 532–33 (Iowa 1987) (noting equitable nature of juvenile proceedings); *In re Shane T.,* 544 A.2d 1295, 1297 (Me.1988) (observing that "suits adjusting the relationship between parent and child were heard in equity without the intervention of a jury" before enactment of state constitution); *In re Heilig,* 372 Md. 692, 816 A.2d 68, 81 (2003) ("Courts of equity have jurisdiction to terminate parental rights. . . ."); *Matter of Colon,* 144 Mich.App. 805, 377 N.W.2d 321, 328 (1985) ("[A]t common law, actions to terminate parental rights did exist, and courts of equity had jurisdiction over them."); *State, Children, Youth & Families Dep't v. T.J.,* 123 N.M. 99, 934 P.2d 293, 298 (N.M.App.1997) ("[A]ctions to terminate parental rights have historically been considered equitable in nature and were so considered in New Mexico

that article I, section 16 of the Alaska Constitution does not provide a right to a jury trial in CINA proceedings.

Alyssa contends, however, that a CINA case is similar to a juvenile delinquency case. In *RLR v. State*, we held that "whenever a child in a delinquency proceeding is charged with acts which would be a crime, subject to incarceration if committed by an adult, the Alaska Constitution guarantees him [or her] the right to jury trial." [13] This right arises from article I, section 11 of the Alaska Constitution, which provides in part that "[i]n all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury." Alyssa concedes that a CINA proceeding is not a criminal proceeding, [14] but nonetheless argues that "[g]iven the fundamental nature of the right involved [to parent one's child], the accused parent ought to have the same right to a jury trial, at least at the adjudicatory stage, as an accused juvenile." We are unconvinced. A CINA proceeding is not a criminal proceeding and is not analogous to a criminal proceeding. Article I, section 11 did not entitle Alyssa to a jury trial at the adjudication stage of the CINA proceedings.

Alyssa also relies on our observation in *RLR* that "the right to jury trial is coextensive with the right to counsel" [15] and argues that because there is a right to counsel in proceedings brought to terminate parental rights, [16] there must also be a right to trial by jury. This argument is unconvincing. *RLR*

there referred to the right to counsel in *criminal* prosecutions; that is a right preserved by article I, section 11. In comparison, the right to counsel in proceedings brought to terminate parental rights arises from the due process clause of the Alaska Constitution. [17]

### 2. Due process

▆▆▆▆ Alyssa alternatively argues that the due process clause of the Alaska Constitution, article I, section 7, [18] entitles her to a jury trial at the adjudication stage of the CINA proceedings. To determine compliance with procedural due process, Alaska courts balance:

(1) "the private interest affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail." [19]

Although "[t]he private interest of a parent whose parental rights may be terminated . . . is of the highest magnitude," [20] this interest must be balanced against the child's right "to an adequate home and education" [21] and the state's interest in the child's welfare. [22] Judges are well situated to make reliable findings in CINA cases, given their knowl-

at the time our constitution was adopted."); *A.E. v. State*, 743 P.2d 1041, 1045 (Okla.1987) ("This Court is cognizant that at common law rights and liabilities arising from status-based relationships were determined in equitable proceedings.").

**13.** *RLR v. State*, 487 P.2d 27, 33 (Alaska 1971).

**14.** *Cf. In re Adoption of A.F.M.*, 15 P.3d 258, 267 (Alaska 2001) (rejecting argument that termination of parental rights in adoption proceeding is criminal in nature because proceedings "serve important non-punitive ends").

**15.** *RLR*, 487 P.2d at 32.

**16.** *V.F. v. State*, 666 P.2d 42, 45 (Alaska 1983).

**17.** *Id.* at 44.

**18.** Article I, section 7 of the Alaska Constitution provides in part that "[n]o person shall be de-

prived of life, liberty, or property, without due process of law."

**19.** *Varilek v. City of Houston*, 104 P.3d 849, 853 (Alaska 2004) (quoting *Midgett v. Cook Inlet Pre-Trial Facility*, 53 P.3d 1105, 1111 (Alaska 2002)). This test is derived from *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See City of Homer v. State, Dep't of Natural Res.*, 566 P.2d 1314, 1319 (Alaska 1977).

**20.** *Matter of K.L.J.*, 813 P.2d 276, 279 (Alaska 1991).

**21.** *R.C. v. State, Dep't of Health & Soc. Servs.*, 760 P.2d 501, 506 n. 15 (Alaska 1988) (quoting *In re S.D., Jr.*, 549 P.2d 1190, 1201 (Alaska 1976)).

**22.** *K.L.J.*, 813 P.2d at 279–80.

edge of and familiarity with the controlling law and the prior proceedings of the case.[23] As for the government's interests, the department points out that jury trials in CINA proceedings could delay reunification or permanent placement, reduce judicial economy, increase the number of parents contesting adjudication instead of attempting to reach an agreement, and compromise the department's ability to maximize its resources.

We conclude that the Alaska Constitution's due process clause does not require the availability of jury trials in CINA proceedings.[24]

### C. The Superior Court Did Not Err by Ordering Alyssa To Undergo a Psychological Evaluation Prior to Adjudication.

■ Alyssa argues that it was error to order her to undergo a psychological evaluation.[25] Child in Need of Aid Rule 16(b) provides that, in the context of *predisposition* reports, "[t]he court may order mental and physical examinations of the ... child's parents." The superior court here ordered Alyssa to submit to a psychological evaluation prior to *adjudication.* Alyssa contends that this was improper because of the "significant difference" between adjudication and disposition.

It is true that the CINA rule pertaining to predisposition reports—CINA Rule 16(b)—specifically mentions physical and mental examinations and that the CINA rule address-

ing adjudication—CINA Rule 15—does not. But CINA Rule 8(a) states that, with limited exceptions not relevant here, the Alaska Civil Rules govern discovery in CINA proceedings. Alaska Civil Rule 35(a) provides that "[w]hen the mental or physical condition ... of a party ... is in controversy, the court ... may order the party to submit to a physical or mental examination." We decline to read the express authority granted in CINA Rule 16(b) concerning predisposition reports as implicitly limiting what the trial court is authorized by other rules to do at the adjudication stage in CINA proceedings.

■ Before a mental or physical examination can be ordered under Alaska Civil Rule 35(a), the movant must show that the other party's mental or physical condition is "in controversy" and that there is "good cause" for an examination. To be "in controversy" means to be "'directly involved in some material element of the cause of action or a defense.'"[26] Good cause exists if "'the mental state of petitioner, even though in controversy, cannot adequately be evidenced without the assistance of expert medical testimony.'"[27] We have also noted that "[t]he ability of the movant to obtain the desired information by other means is also relevant."[28]

These requirements are especially important in the context of CINA proceedings. Civil Rule 35(a) should be invoked cautiously, only after the movant has demonstrated suf-

---

**23.** *See State ex rel. Children, Youth & Families Dep't v. T.J.,* 123 N.M. 99, 934 P.2d 293, 298 (N.M.App.1997) (noting that "familiarity with the prior proceedings and the case as a whole" enables judges to "properly consider all of the factors that must be taken into account in making the difficult decision to either terminate the parent's rights or leave the child in the parent's custody").

**24.** *Accord In Interest of Weinstein,* 68 Ill.App.3d 883, 25 Ill.Dec. 322, 386 N.E.2d 593, 596 (1979) (holding that "the concept of due process does not require a jury trial" in termination of parental rights proceeding); *Matter of Ferguson,* 50 N.C.App. 681, 274 S.E.2d 879, 880 (1981) (finding that "the United States Constitution does not require a jury trial as a part of due process" in proceedings to terminate parental rights); *State in Interest of T.B.,* 933 P.2d 397, 400 (Utah App.1997) ("Neither Utah law nor federal due process guarantees the right to a jury in parental

rights termination proceedings."); *Matter of GP,* 679 P.2d 976, 988 (Wyo.1984) (holding "that the right to a jury trial in a parental-termination action cannot be characterized as fundamental").

**25.** For purposes of our discussion, we assume that Alyssa would have been prejudiced if the superior court abused its discretion by ordering her to undergo a psychological evaluation.

**26.** *Dingeman v. Dingeman,* 865 P.2d 94, 99 (Alaska 1993) (quoting *Gasparino v. Murphy,* 352 So.2d 933, 935 (Fla.Dist.App.1977)).

**27.** *Id.* Because "'[d]iscovery of this type is of the most personal and private nature,'" we have emphasized that "good cause is not just a formality." *Id.* (quoting *Gasparino,* 352 So.2d at 935).

**28.** *Id.* (quoting *Schlagenhauf v. Holder,* 379 U.S. 104, 118, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964)).

ficient justification for a mental or physical examination.[29] This ensures that trial courts can guard against misuse of Civil Rule 35(a) as an unwarranted mechanism for discovering mental or physical issues absent good reason to believe that such issues actually exist.

The department points out that Alyssa's mental state was in controversy for three reasons: (1) the department was trying to restore visitation that it had stopped "because of [Alyssa's] threatening, abusive, hostile, and inappropriate behaviors"; (2) it needed a psychological evaluation in order to make reasonable efforts to reunify the family; and (3) the department petitioned for an adjudication under, among other provisions, AS 47.10.011(11) (on the theory Alyssa's mental or emotional condition placed the child at risk).[30] To demonstrate good cause for ordering the examination, the department submitted the affidavit of a state social worker. The affidavit described these circumstances: physicians had expressed concerns about Alyssa's "coping strategies" and ability to care for her child; Alyssa had exhibited paranoid behavior on several occasions; Alyssa had admitted that she was receiving social security benefits for depression; an "intake assessment" completed by Alyssa had "indicated major depression and mild level anxiety"; Alyssa had been "threatening, abusive, and hostile" to staff; and Alyssa's brother had stated that she was "delusional" and reported a family history of mental illness.

We conclude that Alyssa's mental condition was in controversy and that there was sufficient evidence to establish good cause for a psychological evaluation. It was therefore not an abuse of discretion to order Alyssa to undergo such an evaluation.[31]

## IV. CONCLUSION

For the reasons stated above, we AFFIRM the superior court's amended adjudication orders entered October 22 and October 29, 2003.

**29.** *See Schlagenhauf*, 379 U.S. at 118–19, 85 S.Ct. 234 (noting that corresponding Federal Rule 35 "requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause' ").

**30.** AS 47.10.011 provides in part:

[T]he court may find a child to be a child in need of aid if it finds by a preponderance of the evidence that the child has been subjected to any of the following: ... (11) the parent, guardian, or custodian has a mental illness, serious emotional disturbance, or mental deficiency of a nature and duration that places the child at substantial risk of physical harm or mental injury.

**31.** Alyssa briefly asserts that the superior court's order failed to comply with Civil Rule 35(a)'s requirement that "the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made" be specified. Alyssa appears to raise this issue for the first time on appeal; she has not referred us to any record passage confirming that she brought this contention to the superior court's attention. Moreover, her brief does not address the issue meaningfully on appeal. We therefore decline to consider it.