132 Nev., Advance Opinion 19

# IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF THE PARENTAL RIGHTS AS TO M.F., M.F., AND N.F., MINOR CHILDREN.

No. 67063

JESUS F., JR.,
Appellant,
vs.
WASHOE COUNTY DEPARTMENT OF SOCIAL SERVICES,
Respondent.

FILED

MAR 31 2016



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order terminating appellant's parental rights as to the minor children. Second Judicial District Court, Family Court Division, Washoe County; Deborah Schumacher, Judge.

*Affirmed.*

Jennifer L. Lunt, Alternate Public Defender, and Carl William Hart, Alternate Deputy Public Defender, Washoe County,
for Appellant.

Christopher J. Hicks, District Attorney, and Jeffrey S. Martin, Chief Deputy District Attorney, Washoe County,
for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, GIBBONS, J.:

In this opinion, we consider whether appellant is entitled to a jury trial in a termination of parental rights proceeding. We conclude that

16 - 10011

neither the United States Constitution nor the Nevada Constitution guarantees the right to trial by jury in a termination of parental rights proceeding. Additionally, we conclude that the district court relied on substantial evidence in terminating appellant Jesus F.'s parental rights. Accordingly, we affirm the district court order terminating Jesus F.'s parental rights as to his three minor children.

## FACTS AND PROCEDURAL HISTORY

Respondent Washoe County Department of Social Services (WCDSS) removed Jesus F.'s six children from his home in January 2010 due to drug use, safety hazards, and inadequate supervision. All six children were placed in protective custody pursuant to NRS 432B.330 based on parental neglect and resided in various out-of-home placements over the next four years. By the time the three older children had reached the age of majority, WCDSS filed a petition to terminate Jesus F.'s parental rights as to the three minor children.

Jesus F. filed a demand for a jury trial with the district court. The district court issued an order denying Jesus F.'s jury trial demand, concluding that the right to a jury trial in a parental termination proceeding is not guaranteed by common law, statute, or the Nevada Constitution. Following a bench trial, the district court terminated Jesus F.'s parental rights as to the three minor children. On appeal, Jesus F. argues that the district court erred in (1) denying Jesus F.'s demand for a jury trial in the termination of parental rights proceeding, (2) concluding that it was in the minor children's best interests to terminate Jesus F.'s parental rights pursuant to the statutory presumption contained in NRS 128.109(2), and (3) concluding that Jesus F.'s parental fault had been established pursuant to NRS 128.105(2).

## DISCUSSION

*The district court did not err in denying Jesus F.'s demand for a jury trial in the termination of parental rights proceeding*

"Constitutional issues, such as one's right to a jury trial, present questions of law that we review de novo." *Awada v. Shuffle Master, Inc.*, 123 Nev. 613, 618, 173 P.3d 707, 711 (2007).

Upon de novo review, we conclude that neither the United States Constitution nor the Nevada Constitution guarantees the right to a jury trial in a termination of parental rights proceeding, as outlined below.

*The United States Constitution does not guarantee the right to a jury trial in a termination of parental rights proceeding*

"Termination of parental rights is an exercise of awesome power." *In re Parental Rights as to N.J.*, 116 Nev. 790, 795, 8 P.3d 126, 129 (2000) (internal quotations omitted). The Seventh Amendment to the United States Constitution protects the right to a jury trial in civil cases in certain circumstances, but that Amendment does not apply to the states. *See Hawkins v. Bleakly*, 243 U.S. 210, 216 (1917); *see also Minneapolis & St. Louis R.R. Co. v. Bombolis*, 241 U.S. 211, 217 (1916). While the U.S. Supreme Court has held that the states may not terminate parental rights without due process of law because "the companionship, care, custody and management of [one's] children" is an important interest that "undeniably warrants protection," *Stanley v. Illinois*, 405 U.S. 645, 650-51 (1972), the Court has not addressed whether due process requires a jury trial for a termination of parental rights proceeding. However, because "parents retain a vital interest in preventing the irretrievable destruction of their family life," due process requires states to provide parents with fundamentally fair procedures in parental termination proceedings. *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982).

To evaluate whether such a proceeding violates a parent's due process rights, the U.S. Supreme Court has applied the balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which consists of the following factors: (1) the private interest affected by the proceeding, (2) the risk of error inherent in the state's procedure, and (3) the countervailing government interest. *Santosky*, 455 U.S. at 754. Elaborating on these factors, the Court has indicated that "[a] parent's interest in the accuracy and justice of the decision to terminate his or her parental status is . . . a commanding one." *Id.* at 759 (internal quotations omitted). On the other hand, the state maintains a dual stake in the outcome—a *parens patriae* interest in promoting the child's welfare and an "administrative interest in reducing the cost and burden of termination proceedings." *Id.* at 766. Using the test, the Court has refused to guarantee the right to counsel in a termination proceeding because the parent does not risk a loss of personal liberty. *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 25-26 (1981) ("[A]s a litigant's interest in personal liberty diminishes, so does his right to appointed counsel.").

While Jesus F. correctly argues that the parent-child relationship is a fundamental interest under *Lehr v. Robertson*, 463 U.S. 248, 258 (1983), he fails to demonstrate that this status automatically affords a parent the right to a jury trial in this type of action. Instead, because Jesus F. does not risk a loss of personal liberty in the termination proceeding, this court applies the due process balancing test outlined in *Eldridge* to evaluate the private interests at stake against the government's interest and the risk that the procedures used would have led to an erroneous decision. *See Lassiter*, 452 U.S. at 26-27 (stating that parents do not have a *per se* right to counsel in a termination of parental rights proceeding because parents do not risk the loss of personal liberty).

Under *Eldridge*, Jesus F.'s interest in the companionship, care, custody, and management of his three minor children must be weighed against the state's interest in the welfare of the children, conservation of judicial resources, and the need for an accurate and fair outcome. Since both parties have compelling interests, the analysis turns on an evaluation of the risk that the procedures used would have resulted in an erroneous decision.

We conclude that the district court's decision to hold a bench trial as opposed to a jury trial posed only a minimal risk of an erroneous decision for several reasons. First, a jury, while important, is not a required component of accurate fact-finding. *McKeiver v. Pennsylvania*, 403 U.S. 528, 543 (1971) ("[O]ne cannot say that in our legal system the jury is a necessary component of accurate factfinding."); *Duncan v. Louisiana*, 391 U.S. 145, 158 (1968) ("We would not assert, however, that every criminal trial—or any particular trial—held before a judge alone is unfair or that a defendant may never be treated by a judge as he would be by a jury."); *see In re Weinstein*, 386 N.E.2d 593, 596 (Ill. App. Ct. 1979) (interpreting the U.S. Supreme Court's decision in *McKeiver* as follows: "implicit in the rationale of the holding is that a jury trial is not a fundamental concept of due process"). Here, the family court judge demonstrated familiarity with the rules of evidence, the legal standards of a termination action, and the Nevada Rules of Civil Procedure, and the court applied the heightened clear and convincing evidentiary standard of proof.

Second, Jesus F. was given notice of the proceeding, was afforded competent counsel to represent his interests, and was afforded the opportunity to confront and cross-examine the witnesses against him. *See McKeiver*, 403 U.S. at 543-45 (explaining that juveniles are not

SUPREME COURT
OF
NEVADA

(O) 1947A

5

entitled to a jury trial in delinquency proceedings as long as other fact-finding procedures such as "notice, counsel, confrontation, cross-examination, and standard of proof" are in place to ensure accuracy and protect the juvenile's interests); *see also In re Parental Rights as to N.D.O.*, 121 Nev. 379, 383, 115 P.3d 223, 227 (2005) (providing that while "no absolute right to counsel in termination proceedings exists in Nevada," counsel may be appointed if a case-by-case analysis pursuant to NRS 128.100(2) requires it). Third, Jesus F. retained the right to appeal from an adverse decision. Therefore, we conclude that the district court did not violate Jesus F.'s due process rights pursuant to the U.S. Constitution by denying his demand for a jury trial.

*The Nevada Constitution does not guarantee the right to a jury trial in a termination of parental rights proceeding*

In Nevada, "[t]he right of trial by [j]ury shall be secured to all and remain inviolate forever; but a [j]ury trial may be waived by the parties in all civil cases in the manner to be prescribed by law . . . ." Nev. Const. art. 1, § 3. This court has determined that the phrase "shall . . . remain inviolate forever" indicates an intent to perpetuate the jury trial right as the framers understood it when Nevada's Constitution was adopted in 1864. *See Awada*, 123 Nev. at 621, 173 P.3d at 712 (concluding that Nevada's modern jury trial right does not require a district court to first proceed with legal issues because the jury trial right in 1864 did not impede a court's discretion to address the equitable issues prior to allowing a jury to address the action's legal issues); *see also Cheung v. Eighth Judicial Dist. Court*, 121 Nev. 867, 870-74, 124 P.3d 550, 553-56 (2005) (denying the right to a jury trial in small claims court because no such right existed at the time the Nevada Constitution was adopted); *Aftercare of Clark Cty. v. Justice Court of Las Vegas Twp.*, 120

Nev. 1, 6-7, 82 P.3d 931, 934 (2004) (explaining that Nevada guarantees the right to jury trial in justice court civil actions if small amounts are in controversy because the practice originated in 1861, prior to the adoption of the Nevada Constitution).

Jesus F. argues that Article 1, Section 3 of the Nevada Constitution guarantees him the right to a jury trial. We disagree. Jesus F. correctly argues that since a termination of parental rights action is civil in nature, the matter falls under the purview of Article 1, Section 3 of the Nevada Constitution. However, no such action existed in 1864, and since termination of parental rights actions were created in 1975, the Legislature has not conferred the right to a jury trial in such proceedings, despite ample opportunity to do so. Therefore, under *Awada*, *Cheung*, and *Aftercare*, the Nevada Constitution does not guarantee a jury trial in a termination of parental rights proceeding.

Additionally, requiring jury trials in the district court's family division implicates many of the same policy concerns that the U.S. Supreme Court found persuasive in *McKeiver*, though that case addressed the juvenile court system. *See* 403 U.S. at 550 ("If the jury trial were to be injected into the juvenile court system as a matter of right, it would bring with it into that system the traditional delay, the formality, and the clamor of the adversary system and, possibly, the public trial."). Instituting such a delay would slow the pace of the high volume of cases before the family court each year, yielding a backlog where speedy reunification or permanent placement of the child is of great importance. The formality of a jury trial may also undermine the shared interest in maintaining the child's anonymity in a termination proceeding. Further, family courts in several judicial districts in Nevada are not equipped to accommodate jurors, and to make the administrative and structural

changes necessary to accommodate them would be a time-consuming effort and one that is more appropriately relegated exclusively to the Legislature. Finally, as the U.S. Supreme Court stated in *Duncan* and reiterated in *McKeiver*, we remain unconvinced that a jury would necessarily render a decision more reliable than a family court judge. *See Duncan*, 391 U.S. at 158 ("We would not assert, however, that every criminal trial—or any particular trial—held before a judge alone is unfair or that a defendant may never be treated by a judge as he would be by a jury."); *see also McKeiver*, 403 U.S. at 547 ("The imposition of the jury trial on the juvenile court system would not strengthen greatly, if at all, the fact-finding function.").

Our conclusion is further strengthened by the national trend to deny jury trials in termination of parental rights proceedings.[1] *See*

---

[1]The five states in the minority that guarantee the right to a jury trial in termination proceedings do so pursuant to statute or express state constitutional provision—neither avenue is present in Nevada. Those five states are Oklahoma, Wyoming, Wisconsin, Texas, and Virginia. *See Matter of D.D.F.*, 801 P.2d 703, 705 (Okla. 1990) (explaining that the Oklahoma Constitution expressly guarantees a jury trial in a termination of parental rights proceeding, but that a parent may waive the right); *Matter of GP*, 679 P.2d 976, 983 (Wyo. 1984) (concluding that a parent has a statutory right to a jury trial in a parental termination proceeding); *In re Keylen D.K.*, 828 N.W.2d 251, 258-60 (Wis. Ct. App. 2013) (concluding that although Wisconsin statutorily guarantees the right to jury trial in parental termination proceedings, the state distinguishes between a statutory jury trial right and the heightened procedural protections in criminal cases); *Gen. Motors Corp. v. Gayle*, 924 S.W.2d 222, 226 (Tex. Ct. App. 1996) (noting that a Texas statute confers the right to jury trial in civil cases when one party demands it and pays a jury fee); *Hough v. Mathews Dep't of Social Servs.*, No. 2405-13-1 2014, WL 4412583, at *1 n.1 (Va. Ct. App. Sept. 9, 2014) (explaining that a Virginia statute permits a juvenile or domestic relations issue to be heard by an "advisory jury," in the judge's discretion, upon motion by either party).

Linda A. Szymanski, *Is a Jury Trial Even Available in a Termination of Parental Rights Case?*, Nat'l Ctr. for Juvenile Justice (NCJJ) Snapshot, (2011).[2] The majority of states specifically prohibit a jury trial in a termination of parental rights proceeding by precedent, statute, local court rule, or common practice. *See id.* The Supreme Court of Montana, for example, relied on principles akin to those in *Awada*, and concluded that there is no right to trial by jury in termination proceedings because no such right existed when the Montana Constitution was adopted in 1889, and the Montana Constitution guarantees only rights enjoyed when the Constitution was adopted. *In re M.H.*, 143 P.3d 103, 106 (Mont. 2006). A number of jurisdictions echo similar logic, denying the right to trial by jury in termination proceedings because no right to a jury trial existed for such proceedings at common law. *See, e.g., Alyssa B. v. State, Dep't of Health & Soc. Servs.*, 123 P.3d 646, 648-49 (Alaska 2005); *In re Lambert*, 86 A.2d 411, 412-13 (D.C. 1952); *Porter v. Watkins*, 121 S.E.2d 120, 121-22 (Ga. 1961); *E.P. v. Marion Cty. Office of Family & Children*, 653 N.E.2d 1026, 1030-31 (Ind. Ct. App. 1995); *In Interest of Baby Boy Bryant*, 689 P.2d 1203, 1209 (Kan. Ct. App. 1984); *In re Shane T.*, 544 A.2d 1295, 1297 (Me. 1988); *Matter of Colon*, 377 N.W.2d 321, 328 (Mich. Ct. App. 1985); *State ex rel. Children, Youth & Families Dep't v. T.J.*, 934 P.2d 293, 297-98 (N.M. Ct. App. 1997); *Matter of Ferguson*, 274 S.E.2d 879, 880 (N.C. Ct. App. 1981); *State in Interest of T.B.*, 933 P.2d 397, 400 (Utah Ct. App. 1997).

---

[2]*See* http://www.ncjj.org/pdf/Snapshots/2011/vol16_no3_Jury%20Trial%20In%20Termination%20of%20Parental%20Rights%20Case.pdf (last visited March 30, 2016).

Supreme Court
of
Nevada

(O) 1947A

*The district court relied on substantial evidence in its decision to terminate Jesus F.'s parental rights*

This court closely scrutinizes whether the district court properly preserved or terminated parental rights, but will not substitute its judgment for that of the district court and will uphold the lower court's decision if it is supported by substantial evidence. *In re Parental Rights as to N.J.*, 116 Nev. 790, 795, 8 P.3d 126, 129 (2000). Substantial evidence is that which a reasonable person would accept as adequate to sustain a judgment. *Ellis v. Carucci*, 123 Nev. 145, 149, 161 P.3d 239, 242 (2007).

The Nevada Legislature has adopted a statutory scheme to ensure that parental rights are not erroneously terminated and that every child's needs are protected. *In re Parental Rights as to C.C.A.*, 128 Nev. 166, 169, 273 P.3d 852, 854 (2012). To terminate parental rights, a petitioner must demonstrate by clear and convincing evidence that (1) at least one ground of parental fault exists, and (2) termination is in the child's best interest. NRS 128.105(1)-(2); *In re N.J.*, 116 Nev. at 800-01, 8 P.3d at 132-33; *In re C.C.A.*, 128 Nev. at 169, 273 P.3d at 854. While both factors must be established, "[t]he primary consideration in any proceeding to terminate parental rights must be whether the best interests of the child will be served by the termination." 2015 Nev. Stat., ch. 250, § 3, at 1184-85.[3]

To guide a district court in determining a parent's conduct, NRS 128.109 creates the following two presumptions for a child who has resided outside of the home for 14 of any consecutive 20 months: (1) a court must presume that the parent has made only token efforts to care

---

[3]While the statute has been amended, the amendments do not impact this case.

for the child, and (2) the best interest of the child must be presumed to be served by the termination of parental rights. NRS 128.109(1)(a), (2) (2013). To rebut these presumptions, a parent must prove otherwise by a preponderance of evidence. *In re Parental Rights as to J.D.N.*, 128 Nev. 462, 472, 283 P.3d 842, 849 (2012). A preponderance of the evidence requires that the evidence lead the fact-finder to conclude that "the existence of the contested fact is more probable than its nonexistence." *See Brown v. State*, 107 Nev. 164, 166, 807 P.2d 1379, 1381 (1991) (quotation marks and citation omitted).

Jesus F. argues that the district court improperly (1) relied on the best interests presumption contained in NRS 128.109(2) because he had successfully rebutted the presumption, and (2) found parental fault under NRS 128.105 on Jesus F.'s part sufficient to satisfy a clear and convincing evidence standard. We disagree.

First, substantial evidence supports the district court's findings that termination of Jesus F.'s parental rights was in the minor children's best interests based on the statutory presumption in NRS 128.109(2) and that Jesus F. failed to rebut the presumption due to his failure to show that there was a reasonable prospect that he could provide for the minor children's basic needs in a reasonable period of time. *See In re J.D.N.*, 128 Nev. at 472, 283 P.3d at 849; *see also* NRS 128.107(2)-(3) (outlining the factors that a court shall consider in determining whether parental rights should be terminated). Second, substantial evidence supports the district court's findings as to five separate grounds of parental fault on Jesus F.'s behalf, and the court listed its reasoning with adequate specificity. Thus, we conclude that the district court's decision to terminate Jesus F.'s parental rights was supported by substantial evidence.

## CONCLUSION

Having considered the parties' filings and the attached documents, we conclude that the district court properly denied Jesus F.'s demand for a jury trial in the termination of parental rights proceeding. Additionally, we conclude that substantial evidence supports the district court's decision to terminate Jesus F.'s parental rights. We therefore affirm the district court order terminating Jesus F.'s parental rights.

_____ , J.
Gibbons

We concur:

_____ , C.J.
Parraguirre

_____ , J.
Hardesty

_____ , J.
Douglas

_____ , J.
Cherry

_____ , J.
Saitta

_____ , J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A